UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:20-cr-00085-AKB-1 |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| KASEY ANN WILLARD, | |
| Defendant. | |

Pending before the Court is Defendant Kasey Ann Willard's Motion for Early Termination of Supervised Release. (Dkt. 53). The Government opposes the motion. (Dkt. 54). For the reasons set forth below, the Court denies the motion.

## I.  BACKGROUND

In January 2009, Willard pled guilty to (1) distribution of methamphetamine and (2) attempt to possess with intent to distribute methamphetamine. (Dkt. 16-1 at p. 5). Willard was ultimately sentenced to 140 months in prison with five years of supervised release to follow. (Dkt. 53 at p. 2).

Willard began supervised release in December 2017. (Dkt. 2). The first three years of supervision went well; Willard maintained employment and provided negative urinalysis tests. (Dkt. 16 at p. 2). Then, in 2021, Willard began "struggling financially due to the pandemic and shutdowns at her employer, during this time her father also passed away. Towards the end of the summer, U.S. Probation started to receive reports from local [law] enforcement that the defendant was involved in illegal drug activities." (*Id.* at pp. 2-3). In September 2021, Probation filed a petition to revoke Willard's supervised release, charging her with violating the terms of her release by possessing drug paraphernalia and using methamphetamine. (*Id.*). Willard pled guilty to some

of the violations and was sentenced to forty-five days of imprisonment with a new three-year term of supervised release to follow. (Dkt. 20).

In December 2021, Willard began her second term of supervised release. (Dkt. 38 at p. 3). Although supervision seemed to start relatively well, Willard again violated the terms of her supervision by, among other things, testing positive for methamphetamine in August 2022. (*Id.* at p. 4). To Willard's credit, she completed drug treatment in 2023 and "appeared to be stable and was pursuing early termination of supervision." (*Id.*). Shortly thereafter, however, Willard again admitted to using and tested positive for methamphetamine. (*Id.* at pp. 4-5). Ultimately, in October 2023, Probation filed its second petition for supervised release, alleging Willard violated several terms of her supervised release. (Dkt. 21).

On December 20, 2023, Willard appeared before the undersigned for her supervised release revocation hearing. (Dkt. 41). At the hearing, Willard pled guilty to some of the violations in the second petition, but rather than proceed to sentencing on those violations, Willard asked the Court to hold the violations in abeyance and release her from custody to seek drug treatment. (Dkts. 41, 43). The Court granted the request and continued the revocation hearing until March 2024. (Dkt. 41). Thereafter, Willard was released from prison and began drug treatment at Brick House Recovery, a substance abuse rehabilitation facility. (Dkt. 43). While on furlough for treatment, Willard provided negative urinalysis tests and never missed a treatment session at Brick House. (Dkt. 46 at p. 6). Willard also maintained employment, working full-time at night as a street sweeper. (Dkt. 45). Reports from Brick House indicated Willard was making consistent progress in her drug treatment. (Dkt. 49).

On March 27, 2024, Willard appeared again for the sentencing phase of her continued supervised release revocation hearing. (Dkt. 50). At the hearing, Probation and the Government

recommended revoking Willard's supervised release based on her admitted violations, sentencing her to time served, and imposing supervised release for nine months until December 2024. (Dkt. 47). In contrast, Willard requested the Court not revoke her supervised release but rather continue to hold her violations in abeyance and allow her to continue supervised release for the remaining nine months of her current term. Willard explained that by allowing her to continue on her current term of supervised release, she remained eligible for early termination of supervised release. The Court granted Willard's request and continued to hold her violations in abeyance. The Court made no promises, however, about whether it would grant early termination of supervision and warned that further violations of supervised release may result in revocation of her supervision. (Dkt. 51).

Unfortunately, days after the hearing on April 3, 2024, Willard tested positive for methamphetamine. (Dkt. 52 at p. 2). On April 5, 2024, the manager of Brick House informed Probation that Willard had "struggled with the outcome of her court hearing." (*Id.*). Neither Probation nor the Government, however, petitioned the Court to revoke supervision, and Willard remained on supervision. Willard responded by continuing treatment at Brick House and maintained full-time employment. (*Id.*). Willard graduated from Brick House's recovery program in May 2024. (Dkt. 53 at p. 3). On June 14, 2024, Willard moved for early termination of supervision. (*Id.*).

## II.  LEGAL STANDARD

The Court has broad discretion to impose terms of supervised release. 18 U.S.C. § 3583(e)(1); *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014). Likewise, the Court has broad discretion to terminate supervision after the defendant has served one year of supervised release. 18 U.S.C. § 3583(e)(1). In deciding whether to grant a motion for early termination, courts

must consider several sentencing factors. 18 U.S.C. § 3583(e)(1); *see* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D), (a)(4), (a)(5), (a)(6), (a)(7). If, after consideration of these factors, the Court is satisfied early termination is "warranted by the conduct of the defendant released and the interest of justice," the Court may grant the motion to terminate supervision. 18 U.S.C. § 3583(e)(1). The Ninth Circuit has specifically rejected "the proposition that early termination is reserved for rare cases of exceptionally good behavior," holding that a district court may not require exceptional behavior as a predicate for early termination. *See United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022). In deciding early termination motions, courts must provide an explanation based on consideration of the factors outlined above but need not elaborate unnecessarily. *Emmett*, 749 F.3d at 821-22.

## III.  ANALYSIS

Willard asks the Court to end her supervision early, arguing that further supervision serves no purpose because she has been rehabilitated and poses no risk of reoffending. In opposition, the Government contends Willard should remain on supervision because of her history of substance abuse, the need for deterrence, to protect the public, to provide her with treatment and support, to respect the statutory timelines for supervision, and to avoid unwarranted sentencing disparities.

As an initial point, the Court recognizes Willard has been accountable to the federal government—whether through incarceration or supervision—for a long time. Willard spent over ten years in federal prison and has been supervised for almost seven years since her release. Thus, Willard has been either incarcerated or supervised by the federal government for seventeen years. Willard's supervision may also feel prolonged because her first five-year term of supervision should have ended in December 2022 but was revoked in December 2021 and a new three-year

term imposed until December 2024. With this history, the Court understands why Willard would want an early end to supervision.

Unfortunately, early termination of Willard's supervised release is inappropriate when considering the relevant factors under § 3553(a). First, Willard has violated the terms of supervised release on several occasions within the last twelve months, which suggests early termination of supervision would neither protect the public from further violations nor afford adequate deterrence. Additionally, as the Government notes, early termination would not be consistent with the Court's treatment of similar defendants. (Dkt. 54 at p. 9).

More than anything, however, continued supervision is necessary due to Willard's history of substance abuse. Although Willard has achieved noteworthy periods of sobriety during her time on supervised release, relapse has historically followed. From 2017 to 2020, Willard was sober but began using methamphetamine again during the pandemic. Then, in 2023, Willard completed drug treatment but relapsed again later that year. Willard also used methamphetamine this past April, despite months of sobriety and drug treatment with Brick House. Thus, while Willard has made great strides with her rehabilitation, the risk of relapse remains.

The Court does not mention any of this to criticize Willard. On the contrary, the Court recognizes relapse is often a part of recovery and commends Willard for the difficult and hard work she has done this year in completing drug treatment while also working full-time. The Court also believes Willard can maintain her sobriety and successfully complete her term of supervision. The Court only acknowledges the risk of relapse to explain why continued supervision is still necessary. Supervised release is undoubtedly a burden, but it provides support and accountability to defendants seeking to maintain sobriety. For all these reasons, the Court denies Willard's motion for early termination of supervised release.

MEMORANDUM DECISION AND ORDER - 5

Lastly, while today's decision will likely disappoint Willard, it is in no way intended to discourage her. Although unclear, it appears Willard's relapse in April may have been partially caused by her disappointment with the hearing on March 27, 2024. The Court is hopeful today's order will not have the same effect or lessen Willard's resolve to complete supervision. Willard is only a few months from finishing supervision, and the Court encourages her to finish strong.

### IV.  ORDER

**IT IS ORDERED that:**

1.     The Motion for Early Termination of Supervised Release (Dkt. 53) is **DENIED**.

DATED: October 01, 2024

Amanda K. Brailsford
U.S. District Court Judge